**UNITED STATES DISTRICT COURT**
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Rayshan Watley,                                     Case No. 1:01-cv-739
    Plaintiff

vs

Mona Parks, et al.,                                 **REPORT AND**
    Defendants                                  **RECOMMENDATION**
                                                         (Dlott, J.; Perelman, M.J.)

    Plaintiff, an inmate at the Southern Ohio Correctional Facility (SOCF), brings this prisoner civil rights action under 42 U.S.C. § 1983. Defendants are SOCF Health Care Administrator Mona Parks, SOCF physicians Drs. Obregon and Nzeogu, and SOCF nurse Caroline Reeder. Plaintiff alleges that defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. This matter is before the Court on defendants' motion for summary judgment (Doc. 32), and plaintiff's memorandum in opposition thereto. (Doc. 47).

    A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party must demonstrate the absence of genuine disputes over facts which, under the substantive law governing the issue, could affect the outcome of the action. *Celotex Corp.*, 477 U.S. at 323.

    In response to a properly supported summary judgment motion, the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d

1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). "[A]fter a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Plaintiff's verified complaint (Doc. 2)[1] alleges the following facts. On November 29, 2000, he ingested a razor blade, which an x-ray confirmed when he was taken to the prison infirmary. Plaintiff states that defendant nurse Reeder refused to send him to an outside hospital. He complained to defendant Parks who took no action on his complaints. Plaintiff avers that he

---

[1] Plaintiff's verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment under Fed. R. Civ. P. 56(e). *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

was released from the infirmary on December 19, 2000 and "never received any medical treatment to get the razor blade out of his system" (Doc. 2 at ¶12), and although he assumed the blade passed through his digestive system he later learned from Dr. Obregon that it was still in his stomach. Plaintiff states that Dr. Obregon failed to take steps to remove the blade, and that when he again complained to defendant Parks she took no action.

Plaintiff also alleges he suffers from nerve damage in his lower back and left elbow, and that defendants Parks and Reeder have repeatedly refused his requests to see a doctor for his impairments. He alleges that Reeder told him "if you want to see a doctor get out of J-1." (Doc. 2 at ¶23). Plaintiff also alleges that Dr. Nzeogu, without examining him, denied him medication and an elbow brace prescribed for him by physicians at the Corrections Medical Center, and asserts that the defendants have no treatment plan to address his nerve damage. Plaintiff seeks declaratory, injunctive and monetary relief.

In support of their motion, defendants present the following evidence. Following plaintiff's complaint that he swallowed a razor blade on November 29, 2000, an x-ray was ordered "STAT." (Doc. 32, Exh. B). Physical findings showed 100% oxygen input, unlabored respiration, and no cuts or blood in plaintiff's mouth. *Id*. Nevertheless, he was moved from his segregation cell to the infirmary for observation. (Doc. 32, Exhs. C, G). Eight x-rays taken from November 29, 2000, the date plaintiff swallowed a razor blade, through August 27, 2001, when x-rays confirmed the razor blade had passed, reflect the status of plaintiff's condition throughout the relevant time period. (Doc. 32, Exh. C). Dr. Bruce Martin, the Director of Medical Services for the Ohio Department of Rehabilitation and Correction, states that he has reviewed the series of x-rays, and he avers, "In a case such as this, where a foreign body appears to be in a location

where it is causing no damage, waiting for the object to pass naturally is the most prudent way of medically treating such a situation. In the absence of signs or symptoms surgery would not be indicated since it could pose a greater risk on the patient." (Doc. 32, Exh. I).

Defendants also present evidence relevant to plaintiff's claims that he was denied medical care for nerve damage in his lower back and left elbow. Medical records show that between November 29, 2000 and August 15, 2002, there were 44 doctor's orders written for plaintiff, fifteen of those by Dr. Obregon. (Doc. 32, Exh. D). Plaintiff was also seen numerous times at nurses' sick call, at times by Nurse Reeder. A listing of plaintiff's medical appointments show that since December 1999 he has been transported on a multitude of occasions from SOCF to the hand, dermatology, orthopedics, physical therapy, radiology and pain center clinics at the Corrections Medical Center (CMC) and the Ohio State University Hospital. (Doc. 32, Exh. E). He underwent two MRI's and epidural injections for a small disc protrusion (Doc. 32, Exh. F), and was also prescribed an elbow splint and prescription medications for pain. (Doc. 32, Exh. D).

After incarceration, only the "unnecessary and wanton" infliction of pain constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Wilson v. Seizer*, 501 U.S. 294, 298 (1991), quoting *Whitley v. Albert*, 475 U.S. 312, 319 (1986). Unnecessary and wanton infliction of pain includes those conditions that are "totally without penological justification." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981), quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).

In order to establish a claim for relief under 42 U.S.C. § 1983 for a denial of medical care, a plaintiff must present evidence showing "acts or omissions sufficiently harmful to

evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A prisoner who is allowed to suffer needlessly through a denial of medical care when relief is available has a cause of action under the Eighth Amendment against an individual whose deliberate indifference caused the suffering. *Id*; *Byrd v. Wilson*, 701 F.2d 592, 594 (6th Cir. 1983); *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976). Such a claim has both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson,* 501 U.S. at 297-300.

The objective component requires that the deprivation alleged be "sufficiently serious." *Farmer v. Brennan*, 511 U.S. at 834, quoting *Wilson*, 501 U.S. at 298. "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seizer*, 501 U.S. 294, 298 (1991), citing *Rhodes*, 452 U.S. at 347. *See also Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242 (6th Cir. 1994).

Under the subjective component, plaintiff must establish that defendants acted with deliberate indifference to his serious medical needs, *Estelle*, 429 U.S. at 106; *see also Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 302-303, which requires evidence that defendants ignored a known risk of harm. *Farmer,* 511 U.S. at 837, 842. A prison official may be held liable for denying an inmate humane conditions of confinement only if he knows that an inmate faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Prison officials must exhibit more than lack of due care for a prisoner's health or safety before an Eighth Amendment violation will be found. *Id.* at 835. *See also Whitley*, 475 U.S. at 319. "[T]he official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. It is not enough that the official "should" have perceived a significant risk, but did not. *Id.* Moreover, liability will not be found where a prison official actually knew of a substantial risk of harm to an inmate if he responded reasonably to the risk, even if the harm ultimately was not averted. *Farmer*, 511 U.S. at 844. Applying these standards to the instant case, the Court concludes that plaintiff fails to establish his Eighth Amendment claim.

While it is undisputed that plaintiff swallowed a razor blade on November 29, 2000, contrary to plaintiff's claim that defendants did "nothing" to treat this condition the medical records and x-ray reports show that he was immediately examined and regularly monitored over a period of eight months until the razor blade passed through his system naturally. Although he objects that no steps were taken to surgically remove the razor blade (Doc. 47 at 3), defendants' evidence demonstrates that the decision to forego surgical intervention in favor of waiting for the razor blade to pass naturally did not constitute deliberate indifference, but was a reasoned medical judgment based on the safest course to pursue given the objective and clinical findings presented. (Doc. 32, Exh. I). The decision to follow one course of treatment over another does not constitute deliberate indifference, and the Court may not second guess the medical judgments of the treating physicians. *See Westlake*, 537 F.2d at 860 n.5.

The record also belies plaintiff's contention he was denied medical treatment for back and elbow pain. The medical record shows that he was seen by SOCF medical personnel and CMC doctors for his back and elbow complaints throughout the pertinent time period. (Doc. 32, Exhs. D, E). He was prescribed anti-inflammatory and pain medications, as well as an elbow

cushion and splint. (Doc. 32, Exh. D).  With regard to his complaint that the SOCF doctor substituted another prescription medication for that prescribed by the CMC doctor, it was explained to plaintiff that the CMC prescription was not on the drug formulary and that the SOCF doctor ordered an appropriate substitute, Relafen, an anti-inflammatory, analgesic prescription medication. (Doc. 47, Exh. 11).  Plaintiff's disagreement with the doctor's medical judgment concerning the proper medication for his condition simply does not evidence deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976).

Plaintiff also complains that surgery for the nerve damage in his elbow was delayed, disputing the veracity of the reason given for cancellation of the first scheduled surgery, i.e., because the surgeon experienced a heart attack.  (Doc. 47, Exh. 9).  He alleges he spoke to the doctor who stated "SOCF refused" to transport him. (Doc. 47 at 6).  Plaintiff's hearsay statements do not constitute evidence and cannot be considered.  In any event, plaintiff has failed to place verifying medical evidence in the record establishing any detrimental effect of the alleged delay in treatment. *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001). Therefore, plaintiff's complaints do not rise to the level of a constitutional violation as he fails to present facts demonstrating the seriousness of the deprivation by showing that it adversely affected his condition.

For the foregoing reasons, defendants' motion for summary judgment should be granted.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Defendants' motion for summary judgment be **GRANTED**.

2. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of the Court's Order would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).


Date: 3/16/2004                                             s/David S. Perelman
                                                            David S. Perelman
                                                            United States Magistrate Judge


**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **TEN (10) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **TEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).